**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| J.F., et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>MONIQUE FELDER, et al.,<br><br>               Defendants. | Civil Action No. 24-cv-00547-LWW<br><br>Dated: February 7, 2025 |

<u>**MEMORANDUM OPINION**</u>

Before the Court are the following motions: (1) Plaintiffs J.F., et al.'s ("Plaintiffs," "the parents," or "J.F.") Motion for Summary Judgment; and (2) Defendants Monique Felder, et al.'s ("Defendants" or "MCPS") Cross-Motion for Judgment on the Administrative Record. The motions are fully briefed. Having reviewed the submitted materials, the Court finds this matter appropriate for resolution without oral argument. D. Md. Local R. 105.6. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment is DENIED. Defendants' Cross-Motion for Judgment on the Administrative Record is GRANTED.

**BACKGROUND**

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, was enacted to "ensure[ ] that children with disabilities receive needed special education services." <u>Fry v. Napoleon Cmty. Schs.</u>, 580 U.S. 137, 157 (2017). The IDEA requires that a state receives federal funding for guaranteeing that certain children with physical and intellectual disabilities receive a "free appropriate public education" ("FAPE"). <u>Bouabid v. Charlotte-Mecklenburg Schs. Bd. of Educ.</u>, 62 F.4th 851, 856 (4th Cir. 2023);

G.M. ex rel. E.P. v. Barnes, 114 F.4th 323, 329 (4th Cir. 2024); 20 U.S.C. §

1412(a)(1)(A).

A FAPE generally entails an education and individualized education program

("IEP") that is "reasonably calculated to enable the child to make progress appropriate in

light of his circumstances." Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-

1, 580 U.S. 386, 404 (2017). Where the general education is sufficient to provide such

progress, no relief is required. G.M. ex rel. E.P., 114 F.4th at 329–30. Where the

general education is insufficient, however, the IDEA requires the school to work with

parents "to furnish 'special education and related services' enabling the child to receive

a FAPE." Id. (quoting 20 U.S.C. § 1401(3)(A)).

Procedurally, the IDEA also provides parents the rights to "examine all records"

relating to their child and "participate in meetings" regarding the evaluation and

placement of their child. G.M. ex rel. E.P., 114 F.4th at 330. The IDEA process is

intended to be cooperative between parents and educators to determine whether a

disability exists and what special education should look like for the child. Schaffer ex rel.

Schaffer v. Weast, 546 U.S. 49, 53 (2005). When parents and educators disagree,

however, "the IDEA directs parents to seek a 'due process hearing'" in the state's

administrative forum, where an impartial hearing officer determines "'whether the child

received a free appropriate public education' and orders appropriate relief as

necessary." G.M. ex rel. E.P., 114 F.4th at 330 (citations omitted). Once administrative

state procedures are exhausted, an aggrieved party may file a civil suit in federal district

court. 20 U.S.C. § 1415(i)(2)(A).

The student in this case, J.F., is now a young adult diagnosed with multiple recognized mental and emotional disabilities that were identified by Montgomery County Public Schools ("MCPS") as eligible for special education services under the IDEA, as a student with "Multiple Disabilities," including: an "Emotional Disability," a "Specific Learning Disability," and "Other Health Impairment." Pls.' Mem. of P. & A. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 2, ECF No. 21; Defs.' Mem. of P. & A. in Supp. of Defs.' Cross-Mot. for J. on the Admin. R. and Opp. To Pls.' Mot. for J. on the Admin. R. ("Defs.' Mot.") at 1, ECF No. 22; J.R. 0137–J.R. 0138; J.R. 0206. J.F. was first provided with an IEP beginning in her fourth-grade year and moved to a special education day school in the sixth grade to assist with her learning, until her return to MCPS in seventh grade. J.R. 1050–J.R. 1052. J.F. entered her ninth-grade year at Walt Whitman High School ("Whitman") within MCPS and was exposed to substances which led to later addiction. J.R. 1053–J.R. 1055. In April 2021, J.F. was hospitalized for depression and a drug overdose, and received treatment upon discharge in an intensive outpatient program ("IOP"). J.R. 1056–J.R. 1058.

In June 2021, MCPS convened J.F.'s annual IEP review meeting, where her parents requested that the school provide further emotional support and asked for a reevaluation appointment. J.R. 0044. The school responded that such appointments were full at the time and that testing would have to be revisited later. Id. On August 12, 2021, MCPS convened an IEP meeting to schedule a reevaluation appointment, where J.F.'s parents requested further emotional support at school due to her mental health. J.R. 0044–J.R. 0045. The school responded that they would need to conduct an

updated psychological evaluation, which the parents agreed to. Id.; see also J.R. 1060.
The next day, J.F. was hospitalized for twelve days. J.R. 1061. The parents informed
the school that J.F. was in crisis, that she was hospitalized, and that the discharge
recommendation was likely to be an IOP, and again asked that she be placed in the
MCPS Social Emotional Support ("SESES") program upon her return to school. J.R.
0046.

        In fall 2021, after returning to Whitman, J.F. got into an altercation, resulting in a
six-day suspension. J.R. 1063, J.R. 1064; J.R. 0048–J.R. 0056. On September 13,
2021, the parents informed MCPS that J.F. would be attending a six-week trauma
treatment and academic program, but would retain enrollment at Whitman, to which the
principal responded that MCPS does not permit dual enrollment unless students have
qualified for interim instruction services ("IIS"). J.R. 0053–J.R. 0056. J.F. then applied
for and was accepted into IIS. J.R. 1066. J.F. was subsequently hospitalized and the
parents, through counsel, served MCPS notice of their intent to enroll her in a longer-
term treatment on October 17, 2021. J.R. 0082–J.R. 0083; J.R. 0114.

        At this point, the reevaluation had been mutually delayed, and on October 19,
2021, the parents asked MCPS to complete the reevaluation while J.F. was
hospitalized. J.R. 0113–J.R. 0114. MCPS agreed, but J.F. was discharged from the
hospital and enrolled at Open Sky Wilderness Therapy ("Open Sky") in Utah before the
reevaluation could take place. J.R. 0112, J.R. 0113, J.R. 1067, J.R. 1068. The parents
informed MCPS of J.F.'s enrollment at Open Sky and on November 7, 2021, MCPS
responded that they would complete the reevaluation upon her return. Id. On November

11, 2021, MCPS informed the parents that if J.F. was receiving educational

programming while at Open Sky, she needed to be withdrawn and could re-enroll upon

return, to which the parents responded that she was not receiving educational

programming. J.R. 0111.

     Later in November 2021, the parents participated in an IEP meeting with MCPS

to update them on J.F.'s condition and shared that the stay at Open Sky was expected

to last two to three months, until she demonstrated stability. J.R. 1069–J.R. 1070.

MCPS shared that they would schedule an IEP check-in in December 2021. Id.

     While at Open Sky, a psychological evaluation was completed by Dr. Jennifer

Brown, where J.F. earned a General Ability Index score,[1] placing her overall functioning

in the average range, but that she was susceptible to information overload. J.R. 0125–

J.R. 0127. Additional testing recommended that J.F. be provided with reading support

and interventions. J.R. 0129. It was also determined that J.F. struggled with multiple

other emotional and mental disabilities and enrollment in a long-term residential

treatment center after Open Sky was recommended. J.R. 0137–J.R. 0138.

     While at Open Sky, MCPS withdrew J.F. from Whitman on December 15, 2021.

J.R. 0142–J.R. 0147. On January 26, 2022, after having completed the Open Sky

program and enrolled at Solstice East ("Solstice"), a residential treatment facility, for two

months, J.F. left and was again hospitalized for four weeks, causing her return to Open

---

[1] The General Ability Index score is a composite score representing general cognitive ability that is determined after taking a "Wechsler Adult Intelligence Scale – Fourth Edition" (WAIS-IV) test. J.R. 0125.

Sky. J.R. 1073. J.F. was then placed at Elevations Residential Treatment Center ("Elevations") in April 2022. J.R. 0357; J.R. 1074; J.R. 1013.

On December 7, 2022, the parents, through counsel, requested that MCPS reopen the IEP process and convene a meeting as J.F. neared completion of treatment at Elevations. J.R. 0200. On January 30, 2023, MCPS convened a meeting and found J.F. eligible for services. J.R. 0201–J.R. 0205. On February 15, 2023, the parents and the IEP team met to discuss J.F.'s needs, and MCPS proposed: self-contained instruction for core academics, adult support with general education setting for electives and lunch, as well as weekly thirty-minute counseling session, and monthly one-hour social work services. J.R. 0243–J.R. 0244.

MCPS special education staff proposed that the IEP be implemented in the SESES program, a separate classroom at Whitman. J.R. 0245. The parents shared their concern for J.F.'s return to Whitman and opposed the SESES program because of J.F.'s previously developed skills. J.R. 0250; J.R. 1075–J.R. 1076. The parents were told that for J.F. to attend a different MCPS high school, they would need to be approved for a "Change of School Assignment." Id.

The parents then transferred her to a medically recommended program, Aim House, and filed a due process complaint on April 24, 2023, seeking reimbursement for her placements at Open Sky, Solstice, and Elevations for MCPS's failure to provide J.F. a FAPE. J.R. 0001–J.R. 0010. A due process hearing was convened on August 23, 24, 29, and 31, and September 1 and 27, 2023 before Administrative Law Judge ("ALJ" or "hearing officer") Kirstin E. Blumer. J.R. 1327–J.R. 1328. The ALJ issued her decision

on October 26, 2023, ruling that the school did not deny J.F. a FAPE. The parents now file suit in district court to challenge the ALJ's decisions. J.R. 1401–J.R. 1402.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Matherly v. Andrews, 859 F.3d 264, 279 (4th Cir. 2017). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." Masson v. New Yorker Mag., Inc., 501 U.S. 496, 520 (1991). If the movant meets this burden, the burden then shifts to the nonmoving party to identify evidence that demonstrates the existence of a genuine dispute of material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). A party will succeed on summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

When deciding a motion for summary judgment in IDEA cases specifically, a court must conduct a modified de novo review of the administrative record. G.M. ex rel. E.P., 114 F.4th at 333, 334. This modified de novo review gives "due weight" to the underlying administrative proceedings, meaning that the ALJ's findings are considered prima facie correct if they are regularly made and supported by evidence, rather than found "far from the accepted norm of a fact-finding process." G.M. ex rel. E.P., 114 F.4th

at 334 (citations omitted). A district court cannot affirm, reverse, vacate, or remand the hearing officer's decision; and instead conducts an independent review, "deferring to the hearing officer's 'regularly made' factual findings and ordering substantive or procedural relief as necessary." Id. at 330 (citations omitted). The district court also cannot "substitute its own notions of sound educational policy for those of professional educators." G.M. v. Martirano (Martirano), No. CV 20-0791, 2021 WL 409856, at *5 (D. Md. Feb. 5, 2021) (citing Hartmann ex rel. Hartmann v. Loudoun Cnty. Bd. of Educ., 118 F.3d 996, 999, 1005 (4th Cir. 1997)).

A court must therefore conduct a two-step inquiry. Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley (Rowley), 458 U.S. 176, 206–07 (1982). First, the court must ask if "the State complied with the procedures set forth in the Act." Id. at 206. Then, the court must ask if the IEP developed through the IDEA's procedures was "reasonably calculated to enable the child to receive educational benefits," or in other words, whether the IEP offers a FAPE. Id. at 206–07. A FAPE is found when the IEP is "reasonably calculated to enable the child to make progress appropriate in light of the child's circumstances." Endrew F., 580 U.S. at 404.

The party challenging the ALJ's decision in district court bears the burden of proof to show that the decision was erroneous and not entitled to a presumption of correctness. Martirano, 2021 WL 409856, at *5; see Spielberg v. Henrico Cnty. Pub. Sch., 853 F.2d 256, 258 (4th Cir. 1988). While an ALJ's factual findings are presumed correct if "regularly made," the district court must still "make its own independent determination regarding the legal conclusions that have been drawn by the [ALJ]" and

base its decision on the preponderance of the evidence. A.B. v. McKnight, No. CV 22-3295, 2025 WL 90648, at *7 (D. Md. Jan. 14, 2025); S.S. v. Bd. of Educ. of Harford Cnty., 498 F. Supp. 3d 761, 775 (D. Md. 2020); see Sumter Cnty. Sch. Dist. 17 v. Heffernan ex rel. T.H., 642 F.3d 478, 485 (4th Cir. 2011); see also A.H. v. Smith, 367. F. Supp. 3d 387, 411 (D. Md. 2019); see also Rowley, 458 U.S. at 205.

Because a district court's analysis consists of a modified de novo review, it must provide explanation if it declines to follow the decision of the hearing officer. A.H., 367 F. Supp. 3d at 411. A court may not, however, "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." Rowley, 458 U.S. at 206.

## DISCUSSION

Plaintiffs' claims are analyzed under two primary issues. The first issue concerns the procedure by which the ALJ arrived at her decision. The second issue is that the school denied J.F. a FAPE on both procedural and substantive grounds. The Court concludes that the ALJ's decision is presumed correct and entitled to deference because it was regularly made and that the school provided J.F. with a FAPE.

### I.    The ALJ's findings are entitled to deference because they were regularly made.

Many of Plaintiffs' claims are that the ALJ's findings of fact and assessments of witness credibility are incorrect. A reviewing district court will treat the ALJ's findings of fact as being prima facie correct so long as they were regularly made. G.M. ex rel. E.P., 114 F.4th at 334. In reviewing whether a decision was regularly made, a court must limit its analysis to the "process through which the findings were made, not the results of that

process." Id. (emphasis in original). Liberal deference is given to the ALJ's factfinding, and regularly made decisions are those that are "resolved … in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating [her] responsibility to decide the case." J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va., 516 F.3d 254, 259 (4th Cir. 2008).

The Court finds no indication that the ALJ's findings in this case were not regularly made. An ALJ's decision making process is considered ordinary and proper where: she held a hearing, allowed the parents and the school to offer evidence, and resolved factual questions in a normal way. Id. Here, the ALJ conducted a hearing that lasted six days and consisted of testimony and arguments by both parties, including expert witnesses. J.R. 0972–J.R. 1404. The ALJ then issued a seventy-seven page decision that detailed her explanations and findings. Id. These steps are indicative of an ALJ's regularly made decision making process.

Plaintiffs first argue that the ALJ's decisions were not regularly made and should not be afforded deference because "[t]he ALJ improperly excused the school system's failure to continue to evaluate J.F. during the 2021–22 school year" and that her "conclusions [ ] are clearly inconsistent with both the record and controlling authority." Pls.' Mot. at 13. Plaintiffs contend that the ALJ's findings were not regularly made because she "completely overlook[ed] fact[s]," "overlook[ed] key details," "incorrectly found that [a] letter failed to comply with the requirements," "erroneously excuse[d] the school system's withdrawal of J.F.," and "fault[ed] the parents [...] [which was] incorrect and inconsistent with the record." Pls.' Mot. 13–20. Plaintiffs continue that the ALJ's

findings were not regularly made because the ALJ "failed to recognize" the school's "significant delays." Pls.' Mot. at 21–22.

The Fourth Circuit has explained that claims such as these are not true procedural complaints but merits arguments irrelevant to the question of whether an ALJ's findings were made according to regular procedure:

> This argument is virtually always bound to fail because it imports a merits conclusion into what is supposed to be a procedural inquiry. We cannot know what is inconsistent with the evidence until we consider the merits and figure out whose interpretation of the evidence is correct. And that substantive inquiry would defeat the point of focusing on procedure, namely, to accord proper deference to the "original finder of fact" in this necessarily "fact-intensive" class of cases.

G.M. ex rel. E.P., 114 F.4th at 335 (citations omitted).

Plaintiffs here are attempting to import the ALJ's substantive factual findings as procedural ones. Having been regularly made, "Plaintiffs' contention that the ALJ did not have the same reading of the facts as they do cannot be grounds for refusing to afford those findings due weight." A.B., 2025 WL 90648, at *8. Here, the record indicates that the ALJ examined facts and explained her findings based on the facts presented before her. For example, in making her decision, the ALJ examined proffered evidence and explained that "[t]he evidence and testimony before me do not establish with any specificity the [p]arents' objection to the services outlined in the 2022–2023 IEP." J.R. 1395. The record demonstrates that the ALJ addressed Plaintiffs' assertions but that the evidence led her to a different factual conclusion: "I find that, despite the fact that [administrators responsible for creating the IEP], did not teach [s]tudent … each was able to understand the information presented in the records and by the [p]arents and

provide meaningful input ….." J.R. 1396. Although the ALJ's reading of the facts before her may have differed from the Plaintiffs', such differences do not amount to the findings being irregularly made, and as such, are given due deference by this Court and presumed correct.

Plaintiffs further argue that the ALJ's credibility assessments of the witnesses at the hearing were improper. Pls.' Mot. at 32. Plaintiffs argue that the ALJ's findings regarding the appropriateness of the proposed IEP and placement at SESES were not regularly made when the ALJ "fail[ed] to recognize [J.F.'s] need for intensive special education services or the fact that [J.F.'s] needs had changed over time as a result of her progress in her private programs" because their witness testimony indicated that "J.F.'s needs could [not] have been met in a less restrictive setting than residential," and that "J.F.'s mother described concerns about the student population in the SESES program," but that the ALJ "remarkably [ ] ignored all of this in reaching her conclusion." Pls.' Mot. at 23, 26, 27. Similarly, Plaintiffs contend that "the ALJ overlooked the school system's failure to consider concerns" by dismissing the concerns given by Plaintiffs' witnesses at the hearing. Pls.' Mot. at 28–29. Plaintiffs also argue that the ALJ "inexplicably relie[d] upon the opinions of the school system witnesses, yet they had very little knowledge of J.F." and that "the ALJ ignored the lack of evidence" offered by the school and "improperly dismissed the opinions of the parents' witnesses." Pls.' Mot. at 32.

The Fourth Circuit has held that an ALJ's credibility determination of evidence and witnesses must be given liberal deference. G.M. ex rel. E.P., 114 F.4th at 335.

Specifically, in <u>G.M. ex rel. E.P.</u>, the Fourth Circuit found that "hearing officers are not required to use any particular metric when assessing credibility" and that they are "not required to provide an explanation for 'accepting the testimony of one witness over that of another.'" 114 F.4th at 335–36 (quoting <u>Cnty. Sch. Bd. of Henrico Cnty., Va. v. Z.P.</u>, 399 F.3d 298, 306–07 (4th Cir. 2005) ("credibility determinations implicit in a hearing officer's decision are as entitled to deference under <u>Doyle</u> as explicit findings.").

Here, the ALJ properly weighed the testimonial evidence and permissibly determined credibility. In doing so, the ALJ provided an explanation for accepting the testimony of one witness over another and explained why she weighed credibility in favor of witnesses. <u>See</u> J.R. 1400. For example, in making her determinations regarding the appropriateness of the IEP, the ALJ considered the parents' testimony: "[w]hile I certainly understand the [p]arents' perspective that attendance at [the school] could be difficult for the [s]tudent or trigger her based on her past experiences …." J.R. 1400. Similarly, the ALJ examined the testimony of the school's witnesses in making her decision, "[b]ased on the lack of evidence by the [p]arents and upon consideration of the persuasive explanations offered by [the school's] witnesses …." <u>Id</u>. The ALJ determined that the parents and their witnesses presented ambiguous objections to the IEP services in the SESES program and noted explicitly that she gave little weight to Plaintiffs' expert witness, "as [the witness's] assertions were vague and unsupported." J.R. 1396. The ALJ also noted that despite not having the burden of proof, the school's witnesses were "able to understand the information presented in the records and by the

[p]arents and provide[d] meaningful input in developing an IEP for the [s]tudent that was reasonably calculated to allow her to make progress in light of her circumstances." Id.

Contrary to Plaintiffs' assertions, the ALJ properly made permitted credibility determinations and acknowledged the testimony when making her determinations. Because the ALJ took into account and weighed the parents' perspective, the testimony offered by the parents and their witnesses, the evidence offered, and the school's witnesses when making her factual findings, the Court finds that that the ALJ's factual determinations were regularly made and are therefore presumed correct.

## II.    The school did not deny J.F. a FAPE.

Having determined that the ALJ's factual determinations are presumed correct, "it becomes difficult for Plaintiffs to meet their burden of proving" that a procedural or substantive violation of the IDEA occurred. Martirano, 2021 WL 409856, at *6.

### A.    The School Did Not Procedurally Violate the IDEA

The IDEA provides parents procedural rights, namely the right "to participate in meetings regarding the identification, evaluation, and placement of their child." G.M. ex rel. E.P., 114 F.4th at 330; 20 U.S.C. § 1415(b)(1). A procedural inadequacy will only amount to the denial of a FAPE if it: "(1) impeded the child's right to a [FAPE]; (2) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a [FAPE] to the parents' child; or (3) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

Plaintiffs first claim that the school procedurally violated the IDEA when it "improperly stopped J.F.'s reevaluation and IEP process during the 2021–22 school

year." Pls.' Mot. at 13. The ALJ found that the school did not have the authority or

opportunity to evaluate J.F. between August 12 and October 29, 2021. J.R. 1379–

J.R.1381. Plaintiffs argue that this finding misses key details since "there is no record of

MCPS ever following up asking for the consent to evaluate form or expressing any

concern that they needed to move forward with the assessments but could not until they

had the returned form."[2] Pls.' Mot. at 15.

---

[2] Plaintiffs additionally argue that the ALJ overlooked that the school improperly stopped J.F.'s reevaluation and IEP process during the 2021-2022 school year when it delayed the reevaluation process by two months over the summer, rather than in June 2021, as the parents had requested. Pls.' Mot. at 14. However, Plaintiffs did not make this argument at their hearing request or before the ALJ.

20 U.S.C. § 1415(f)(3)(B) provides that a party "shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise." Further, 20 U.S.C. § 1415(i)(2)(A) provides that an aggrieved party following the ALJ determination can bring a civil suit in a district court "with respect to the complaint presented pursuant to this section." Subsection (i)(2)(C)(ii) also provides that the district court "shall hear additional evidence at the request of a party," but does not provide that the district court shall hear additional arguments or claims. Other courts have explained that administrative exhaustion applies in IDEA due process hearings without special explanation, and that "the authority of the district court to receive new evidence does not transform the review proceedings into a trial de novo." Andersen ex rel. Andersen v. District of Columbia, 877 F.2d 1018, 1025 (D.C. Cir. 1989); see also Leonard ex rel. Leonard v. McKenzie, 869 F.2d 1558, 1563 (D.C. Cir. 1989) ("Two concerns, among others, informing the exhaustion doctrine are fairness to the agency and the orderliness of administrative practice and procedure; it would be both unfair and unwieldy to overturn the hearing officer's decision on grounds that she had no opportunity to consider or evaluate.").

Because it is this Court's duty to "defer[ ] to the hearing officer's 'regularly made' factual findings and ordering substantive or procedural relief as necessary," the ALJ was not able to consider or evaluate this claim, and Plaintiffs have not shown any special explanation for failing to bring this claim at the prior hearing. G.M. ex rel E.P., 114 F. 4th at 330. As such, the Court will not now rule on it.

It is undisputed that on August 30, 2021, the parents and MCPS agreed to reevaluations, which were delayed further after J.F. was hospitalized twice before moving to Open Sky. J.R. 0044, J.R. 0045, J.R. 0113, J.R. 0114. The parents asked the school on October 19, 2021, if the reevaluations could be conducted in the hospital, which the school agreed to. J.R. 1380. On October 29, 2021, the parents informed the school that they had placed J.F. at Open Sky and requested that they revisit the reevaluation process upon the student's return in January 2022, which the school agreed to. J.R. 1380, J.R. 1381. It is also undisputed that during the time between August 12 and October 29, 2021, the parents did not sign a consent form, as required from the school, for reevaluation. J.R. 1381. The ALJ found that "MCPS did not have the opportunity or the authority to reevaluate the [s]tudent between August 12 and October 21, 2021." Id.

Plaintiffs have not met their burden in overcoming the ALJ's factual determination that MCPS did not have the opportunity or authority to reevaluate J.F. during the time period at issue. Plaintiffs argue that "[a] school has an affirmative obligation to 'conduct a full and individual initial evaluation' of an eligible student 'before' it begins providing services." Pls.' Mot. at 15 (citing Z.B. v. District of Columbia, 888 F.3d 515, 524 (D.C. Cir. 2018)). However, in Z.B., the court came to its conclusion because the school had decided to forego an evaluation and instead relied on the parents' concerns to adopt an IEP. Id. Here, the school abided by the parents' wishes to postpone reevaluations while the student was hospitalized and enrolled at Open Sky, and "a [school] district can hardly be faulted for complying with the Parents' wishes …." MM ex rel. J.M. v. Foose,

165 F. Supp. 3d 365, 385 (D. Md. 2015). Further, 20 U.S.C. § 1412(a)(3)(A) makes

clear that students with disabilities are to be "identified, located, and evaluated and a

practical method is developed and implemented to determine which children with

disabilities are currently receiving needed special education and related services."

There is no evidence to suggest that the school failed to evaluate J.F. in a practical

method when it agreed to the parents' request to postpone the reevaluation due to

J.F.'s hospitalization and the parents failed to provide a consent form.

Plaintiffs next argue that they were procedurally denied a FAPE because an

October 17, 2021 letter from their private counsel to the school's principal properly

notified the school that they were placing J.F. at a private school and a FAPE was at

issue. Pls.' Mot. at 16. The ALJ found that the letter failed to comply with the

requirements set out in 34 C.F.R. § 300.148 to qualify for reimbursement because it, as

well as subsequent communication from the parents, "fail[ed] to identify parental

concerns regarding the services provided for the [s]tudent by MCPS or reject her

placement at Whitman as set forth in the 2021–2022 IEP" and that there was "no

request for reimbursement included in the letter." J.R. 1384. The parents argue that

"there would be no other reason for the parents to have sent this letter or reference this

specific regulation if they were not concerned about J.F.'s proposed placement or

potentially seeking reimbursement for the placement at Elevations." Pls.' Mot. at 16.

However, the ALJ's factual determination, accorded due deference, "makes clear that

the [p]arents sought to remove the [s]tudent from [school] on an emergent basis … for

purposes of mental health treatment, and to ensure her health and safety." J.R. 1384.

As such, Plaintiffs have not met their burden in showing that a procedural violation of a FAPE occurred.

Finally, Plaintiffs argue that the school "had a clear obligation to provide FAPE to J.F. even after she enrolled in a private program." Pls.' Mot. at 18. The Supreme Court has made clear that reimbursement for a child's unilateral placement in private school is not barred where the state had failed to provide a FAPE. Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 240–42 (2009). However, when a student is unilaterally placed in private education, reimbursement for the private education is limited to specific circumstances. One such circumstance entitling reimbursement for private education is if the public school's proposed IEP is rejected by the parents and brought under administrative or judicial review. MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536–37 (4th Cir. 2002); District of Columbia v. Vinyard, 971 F. Supp. 2d 103, 111 (D.D.C. 2010). Parents are also entitled to private school tuition reimbursement when the local school system "failed to respond to [the parents'] repeated requests for evaluations and an IEP" while the child is unilaterally placed at private school. Moorestown Twp. Bd. of Educ. v. S.D., 811 F. Supp. 2d 1057, 1077 (D.N.J. 2011); see also D.C. v. Vinyard, 971 F. Supp. 2d 103, 113–14 (D.D.C. 2013). Similarly, parents are entitled to private school tuition reimbursement if "the local school system had not made FAPE available to the student in a timely manner before the parent enrolled the student in nonpublic school." Sandler ex rel. Sandler v. Hickey, 5 F. App'x 233, 236 (4th Cir. 2001) (citation omitted). That is, "parents who enroll their children in nonpublic school

without affording the local school system an opportunity to provide a FAPE in a timely fashion will not be entitled to reimbursement." Id.

Here, the parents not only unilaterally placed J.F. at a private institution, but also requested to postpone the reevaluations until J.F. returned to MCPS. J.R. 0113–J.R. 0114. Additionally, a school official told the parents as early as September 13, 2021, that J.F. would be withdrawn if she was not attending school or participating in an IIS program, with the parents withdrawing her from IIS on October 29, 2021. J.R. 1390. The ALJ factually found that the later December 2021 emails from the school alerting the parents that the student would be withdrawn after enrolling in private education and the parents' subsequent decision to leave the IIS program was a formalization of the parents' actions to withdraw the student. J.R. 1391– J.R. 1392. Therefore, in accepting the ALJ's factual findings as correct, Plaintiffs withdrew J.F. from Whitman and unilaterally placed J.F. in private education while simultaneously requesting and agreeing to delay the reevaluations.

The parents enrolled J.F. in a nonpublic school and MCPS did not have the opportunity to evaluate or provide a FAPE in a timely fashion while J.F. was at the private institution. As such, Plaintiffs have not met their burden in showing that the ALJ's decision that "the [p]arents' decision on October 29, 2021, to place the [s]tudent at Open Sky, along with their request to withdraw her from IIS and postpone the reevaluations until the [s]tudent was discharged from Open Sky, relieved MCPS of its obligation …" was incorrect. J.R. 1387.

Plaintiffs' final procedural argument is that "the ALJ improperly excused the school system's belated proposal of a more intensive special education program for J.F." after an IEP was developed for the 2022–2023 school year. Pls.' Mot. at 21. The ALJ found that because the school did not have an obligation to develop an IEP after the student withdrew on October 29, 2021, it was not obligated to develop an IEP until the parents request to resume on December 7, 2022. J.R. 1392–J.R. 1393. Plaintiffs' main argument against this decision is that the school was obligated to continue the IEP while J.F. was withdrawn from MCPS and enrolled in an out of state school. Pls.' Mot. at 23. Plaintiffs assert that "at the bare minimum [the school must] inform the parents that they had the right to continue the process while she was enrolled in school out of state, or file for due process." Id. However, Plaintiffs provide no authority for this statement. The ALJ's finding that "the IEP team worked with all haste to develop the [s]tudent's IEP promptly and expeditiously" upon reenrollment to MCPS is therefore presumed correct. J.R. 1393.

**B.    The School Did Not Substantively Violate the IDEA**

Substantively, the Supreme Court has held that to provide a FAPE within the IDEA, an IEP must be "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 207. Notably, the review of an IEP focuses on whether it was reasonable, rather than ideal, and "enable[s] the child to make progress appropriate in light of his circumstances." Endrew F., 580 U.S. at 404. Under the IDEA, a school is required to "educate children with disabilities in the least restrictive environment – that is, alongside children who are not disabled, to the maximum extent

appropriate." A.B., 2025 WL 90648, at *12 (quoting R.F. v. Cecil County Public Schools, 919 F.3d 237, 246 (4th Cir. 2019)). A child should be removed from the general educational environment "only when the nature or severity of the disability of the child is such that education in regular classes cannot be achieved satisfactorily." A.B. ex rel. D.B. v. Lawson (Lawson), 354 F.3d 315, 319 (4th Cir. 2004). If an adequate IEP is not offered, a student is denied a FAPE and "the child's parent may remove the child to a private school and then seek tuition reimbursement from the state." Id. at 320.

District courts must "afford great deference to the judgment of education professionals," as well as give "great deference to the views of the school system rather than those of even the most well-meaning parent." A.B., 2025 WL 90648, at *12. If a district court rules opposite an ALJ, it must "repudiate [ ] the findings of the ALJ and discard [ ] the expertise of the IEP Team with [ ] reason [and] explanation." Lawson, 354 F.3d at 327.

Plaintiffs argue that "[t]he ALJ incorrectly determined that the proposed IEP and placement at SESES [were] appropriate for J.F." Pls.' Mot. at 23. The argument can be broken down as follows: (1) Plaintiffs argue that the IEP itself was inappropriate; and (2) that any IEP within SESES would be inappropriate because J.F.'s needs could only be met in a residential setting. Id. Plaintiffs argued before the ALJ that J.F. required a residential setting to benefit from any education whatsoever and that J.F.'s needs could not have been met in a less restrictive setting than a residential setting. Pls.' Mot. at 23, 25. The ALJ found that the school's IEP provided J.F. with a FAPE because it included

educational support recommended by J.F.'s previous psychologist, Dr. Brown. J.R.

1395. A review of the record leads this court to the same conclusion.

The parents' psychological report conducted by Dr. Brown, J.F.'s three treatment

plans from Elevations, the Elevations discharge summary, J.F.'s Elevations report

cards, a treatment plan summary from Open Sky, two discharge summaries from Open

Sky, and information from J.F.'s teachers at Elevations regarding her academic

progress while enrolled there, were all considered by MCPS in developing J.F.'s IEP.

J.R. 1395–J.R. 1396. The psychological report conducted by Dr. Brown, J.F.'s previous

psychologist, recommended that instructors: check in frequently with J.F., give J.F.

preferential seating, extend J.F.'s time for testing, and offer the ability to access books

in audio form. J.R. 1396. Each of these recommendations was included in the IEP. Id.

Further, while Plaintiffs' expert witness psychologist testified that she had concerns

about the effectiveness of the IEP and that she did not believe it would be beneficial,

she did not provide alternatives or contact MCPS prior to sharing her opinions. Id. In

the ALJ's credibility determinations, which this Court accepts as correct, she found that

the parents' expert psychologists' testimony regarding the insufficiency of the IEP was

vague and unsupported. J.R. 1394, J.R. 1396.

The school's IEP, incorporating the recommendations made by Dr. Brown

(including frequent check ins from school instructors to ensure her understanding,

preferential seating, extended testing time, and the ability to access books in audio

form), were all unobjected to during prior meetings with the parents. J.R. 1206, J.R.

1293, J.R. 1394, J.R. 1396. Instead, the parents only objected to the IEP within the

SESES classroom at the school, without specifying an alternative to SESES. J.R. 1197, J.R. 1366. However, the objection of an IEP within the SESES classroom does not meet the burden of demonstrating the inappropriateness of the IEP itself. S.P. ex rel. A.P. v. McKnight, No. CV 22-3295, 2024 WL 3606509, at *7 (D. Md. July 29, 2024). Because the school took into consideration all the available records and implemented support and modifications that addressed each of these concerns, the IEP was "reasonably calculated to enable [J.F.] to make progress appropriate in light of [her] circumstances." Endrew F., 580 U.S. at 404.

The parents argue that a residential setting was the only option that could provide for J.F.'s needs and that they were worried about J.F. returning to Whitman. Pls.' Mot. at 24. However, Plaintiffs' assertions run counter to the court's findings that schools must "educate children with disabilities in the [least restrictive] environment." S.P., 2024 WL 3606509, at *7 (alteration in original) (emphasis added) (quoting R.F., 919 F.3d at 246). Children should be removed from "the regular educational environment […] only when the nature or the severity of the disability of a child is such that education in regular classes [with appropriate support] cannot be achieved satisfactorily." R.F., 919 F.3d at 246 (quoting 20 U.S.C. § 1412(a)(5)). As such, it cannot be found that the school denied J.F. a FAPE. While the SESES classroom is a separate classroom from the regular educational environment, it is far less restrictive than a residential program, as it is still within the public Whitman school. Therefore, because the IEP within SESES was "reasonably calculated to enable [J.F.] to make progress appropriate in light of [her] circumstances," Endrew F., 580 U.S. at 404, the school

Civil Action No. 24-cv-00547-LWW                                              Page 24

properly provided a FAPE by educating J.F. in the least restrictive environment "to the maximum extent appropriate." <u>Lawson</u>, 354 F.3d at 319 (citation omitted).

While the Court and the ALJ can "certainly understand the [p]arents' perspective that attendance at Whitman could be difficult for the [s]tudent," J.R. 1400, the Court must also provide "great deference to the views of the school system rather than those of even the most well-meaning parent." <u>A.B.</u>, 2025 WL 90648, at *12. Here, an IEP within SESES was presented and unobjected to by the parents. The IEP within SESES was less restrictive than a residential treatment center and was reasonably calculated to meet J.F.'s needs. Such considerations do not result in a denial of a FAPE. This is true even when the most well-meaning parents disagree as to the placement of the child. <u>A.B.</u>, 2025 WL 90648, at *12. Because the IEP at SESES was reasonably calculated based on the offered evidence to the school, Defendants did not deny a FAPE where the parents did not disagree with the IEP itself but instead did not want the child to attend SESES.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **DENIED**. Defendants' Cross-Motion for Judgment on the Administrative Record is **GRANTED**.

/s/      Lisa W. Wang
 Judge

Dated: <u>February 7, 2025</u>
        Greenbelt, Maryland